**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| **AMY MCKAY GEHAN,** | § | **CIVIL ACTION NO. 4:09-cv-00090** |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | |
| | § | |
| **BROOKDALE SENIOR LIVING,** | § | **JURY DEMAND** |
| **INC., and AMERICAN** | | |
| **RETIREMENT CORPORATION** | | |
| **Defendants.** | § | |

## PLAINTIFF, AMY MCKAY GEHAN'S, ORIGINAL COMPLAINT

**TO THE HONORABLE JUDGE OF SAID COURT:**

**NOW COMES** Amy McKay Gehan, hereinafter called Plaintiff, and states that this is an

action authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, 42

U.S.C.A. §§ 2000e et seq. and the Pregnancy Discrimination Act amendment, 42 U.S.C.A. §

2000e(k), to Title VII for damages based on the an unlawful employment practice committed by

defendants', Brookdale Senior Living, Inc., and American Retirement Corporation.

### PARTIES AND SERVICE

1.      The claims asserted in this complaint arose in the above named district and

division.  Plaintiff Amy McKay Gehan, is a citizen of the United States and the State of Texas

and resides at 6613 Shady Point Drive, Plano, Denton County, Texas 75024.

2.      Defendant, Brookdale Senior Living, Inc.,  is a business incorporated by the laws

of the State of Tennessee and licensed to do business in the State of Texas.  Defendant may be

served by serving CT Corporation Systems, its registered agent authorized to accept service at

**PLAINTIFF, AMY MCKAY GEHAN'S, ORIGINAL COMPLAINT**          Page 1
08-0484.CPO– original complaint– sex discrimination

350 N. St. Paul Street, Dallas, Texas 75201. Defendant is an employer engaged in an industry that affects commerce and employs more than 15 employees qualifying as an "employer" for the purposes of Title VII under 42 U.S.C.A. § 2000e(b).

3.      Defendant, American Retirement Corporation, is a business incorporated by the laws of the State of Tennessee and licensed to do business in the State of Texas. Defendant may be served by serving CT Corporation Systems, its registered agent authorized to accept service at 350 N. St. Paul Street, Dallas, Texas 75201.  Defendant is an employer engaged in an industry that affects commerce and employs more than 15 employees qualifying as an "employer" for the purposes of Title VII under 42 U.S.C.A. § 2000e(b).

## JURISDICTION

4.      Jurisdiction of this court is invoked pursuant to Section 706(f) of Title VII, 42 U.S.C.A. § 2000e-5(f).

## CONDITIONS PRECEDENT

5.      All conditions precedent to jurisdiction have occurred or been complied with pursuant to 42 U.S.C.A. §§ 2000e-5.  Specifically, a charge of employment discrimination was filed with the Equal Employment Opportunity Commission on June 2, 2008 (See Ex. A) within 180 days of the unlawful employment practice which ended with the plaintiff's employment termination on March 27, 2008.  Plaintiff received a Notification of a Right to Sue on November 25, 2008 (See Ex. B);  and this complaint has been filed within 90 days of the receipt of such Notice under § 2000e-5(f)(1).

**PLAINTIFF, AMY MCKAY GEHAN'S, ORIGINAL COMPLAINT**      Page 2
08-0484.CPO– original complaint– sex discrimination

# FACTS

6.      At all relevant times herein, plaintiff was an employee of Brookdale Senior Living, Inc. and American Retirement Corporation.  American Retirement Corporation is believed to be a division of Brookdale Senior Living, Inc.

7.      Plaintiff was hired by defendants on August 28, 2006, in the position of Regional Director of Innovative Senior Care and was responsible for the defendants' operations in Texas. During the time she worked for the defendants, the defendants reorganized and re-titled her position to be Sr. Director of Innovative Senior Care (ISC), which did not change the plaintiff's duties or responsibilities.

8.      Oklahoma was added to plaintiff's division and plaintiff was the senior director for the division that comprise Texas and Oklahoma from approximately April of 2007 until her job termination on March 27, 2008.  Plaintiff reported directly to Andy Gruen, Regional Vice President of ISC operations, from August 28, 2006, through her termination.  Plaintiff was responsible for the management of more than 100 employees.

9.      Plaintiff was required to be on the road four days a week with her position.

10.     Prior to her pregnancy, plaintiff was consistently positively evaluated by her managers, peers and subordinates concerning the management of her division.  In October 2007, plaintiff was granted stock options with the defendant, Brookdale Senior Living, Inc.

11.     During the months leading up to her pregnancy, the plaintiff, as part of the defendant's management team, began to see troubling signs concerning the way women taking family medical leave during a pregnancy or upon the birth of a child were treated by the

**PLAINTIFF, AMY MCKAY GEHAN'S, ORIGINAL COMPLAINT**          Page 3
08-0484.CPO– original complaint– sex discrimination

defendant.

12.     Specifically, Jennifer Tingle was a regional director, a position reporting to the plaintiff, when the plaintiff first began to work for the defendant.  When Ms. Tingle was out on leave after her pregnancy, Lee Ann Fein, the Senior Vice President of ISC Operations, the Plaintiff's bosses boss, started to question if Jennifer Tingle would return to work at the end of maternity leave, and started to question if the team needed to find a replacement for her.  Both the plaintiff and Jack Carney confirmed that it was anticipated Ms. Tingle would return to work.

13.     When Ms. Tingle returned to work, Ms. Fein changed her region completely to become 100% new business; she was not provided the staff that she needed to run the region yet she was held accountable for the performance of her new region as if it was fully staffed with experienced people.  Ms. Tingle's business suffered for several months.  A decision was made to terminate Ms. Tingle by Mr. Gruen and Ms. Fein.  The defendants than began a write-up process after the decision to terminate had been made.  Ms. Tingle, however would not just cooperate and fail.  Her business began showing good improvement as she was able to effect changes in the new region.  It did not matter.  Ms. Tingle was terminated by the defendants while the plaintiff was on maternity leave.

14.     Because plaintiff could see from the inside how Ms. Tingle was being treated upon return from maternity leave, plaintiff feared pregnancy discrimination as she herself had recently become pregnant.

15.     Plaintiff informed Andy Gruen that she was pregnant on approximately March 30, 2007.

**PLAINTIFF, AMY MCKAY GEHAN'S, ORIGINAL COMPLAINT**          Page 4
08-0484.CPO– original complaint– sex discrimination

16.     Plaintiff developed a management plan for her business responsibilities with the defendant prior to plaintiff's maternity leave which is attached as exhibit C.

17.     The management plan, attached as exhibit C, was submitted to plaintiff's supervisor, Mr. Gruen on August 14, 2007.

18.     The Plaintiff was not asked to modify the management plan in any way.

19.     The management plan plaintiff created was not followed during the plaintiff's absence.

20.     No management plan was followed for the plaintiff's business responsibilities while she was out on maternity leave.

21.     Plaintiff wanted to make sure that her boss, Mr. Gruen, knew what steps needed to be accomplished on a daily, weekly, monthly and quarterly basis to educate and hold her team accountable for its performance.  Plaintiff feared that the successful division she had built would fall apart unless plaintiff's plan, or one similar to it was not followed during her absence.

22.     Plaintiff took leave on approximately September 27, 2007, her baby was born on September 29, 2007, and she was scheduled to return to work on January 7, 2008.

23.     Plaintiff attempted to talk daily with her team during the maternity leave.  After a couple of weeks, team members would not return phone calls, plaintiff's email stopped working and plaintiff was unable to even pull up reports on her computer to see how her team was doing. Plaintiff felt isolated and was afraid for her job.  Two weeks before her scheduled return to work plaintiff learned why her calls were not being returned.

24.     At some point early during plaintiff's maternity leave, plaintiff's direct supervisor

**PLAINTIFF, AMY MCKAY GEHAN'S, ORIGINAL COMPLAINT**          Page 5
08-0484.CPO– original complaint– sex discrimination

Mr. Gruen forbid team members from contact with the plaintiff.

25.     As she was cut off from her team members, plaintiff felt increasingly isolated and alone.

26.     Plaintiff originally planned to return to work, after maternity leave on January 7, 2008, however, Plaintiff returned on December 31, 2007.

27.     When plaintiff returned, her division was a far different place than when she left it as a top performer 3 months earlier for maternity leave.

28.     During December of 2007, when plaintiff was gone on maternity leave, the financial condition of her division materially worsened.  Six of seven regions did not meet budget and the remainder, Dallas/Fort Worth was in financial peril as well.

29.     When the plaintiff returned on December 31, 2007, in the Dallas/Fort Worth region alone, one regional director was new and one would soon give notice that she was leaving the defendants.  In addition, there was not a director of nurses, and multiple openings existed for coordinators, therapists, and nurses.  Of the 17 community coordinators, only one remained that demonstrated the skills and knowledge to be successful in that position.  Several community coordinators were new and unproven and many positions were open and unfilled.

30.     Plaintiff immediately recognized that she was being treated differently than before she took maternity leave.  Plaintiff's immediate superior, Mr. Gruen indicated that management was concerned and was focused on Dallas/Ft. Worth due to the decline in profits.  Thereafter, plaintiff was denied resources to fill the critical positions that were empty and plaintiff was denied help from the interim regional directors as he indicated a greater need in Denver and

**PLAINTIFF, AMY MCKAY GEHAN'S, ORIGINAL COMPLAINT**        Page 6
08-0484.CPO– original complaint– sex discrimination

Florida.  Plaintiff expressed dismay with expectations that were being heaped on her while
concurrently, she was being starved of resources to comply.  Mr. Gruen told plaintiff that he was
sure that someone of the plaintiff's caliber, could make it happen.  Plaintiff was being set up to
fail.

31.     Plaintiff attempted to bring in strong regional directors from other areas on an
alternating basis to help rebuild Dallas/Ft. Worth without hurting other regions, but the
defendants would not allow that to occur.  Plaintiff identified a coordinator from one of
plaintiff's other communities, in the Corpus Christi region, who would be a strong coordinator
for the Dallas/ Ft. Worth area.  Despite the coordinator being from within plaintiff's division, the
coordinator, Joe Arroyo, was only allowed to spend 2-3 days a week in Dallas.  Again, plaintiff
was being set up to fail.

32.     On January 18, 2008, 19 days after returning from maternity leave, Mr. Gruen
indicated that a "Texas Recovery Project" was being started.  Mr. Gruen indicated that Texas was
not doing well so it was going to be split up.  Prior to maternity leave, Mr. Gruen and the plaintiff
would problem solve decisions together or at least, plaintiff would be allowed an opportunity to
make suggestions to any plan.  Despite the obstacles from the defendant, by mid-January of
2008, Texas was already beginning to turn around financially, although no one in defendants'
management would recognize that fact.

33.     On January 23, 2008, three weeks after returning from maternity leave, plaintiff
met with Mr. Gruen and others in management concerning what the defendant termed the "Texas
Recovery Project."

**PLAINTIFF, AMY MCKAY GEHAN'S, ORIGINAL COMPLAINT**          Page 7
08-0484.CPO– original complaint– sex discrimination

34.     The Texas Recovery Project essentially stripped the plaintiff of the ability to control defendants' operations in most of Texas outside of the Dallas/Fort Worth region.

35.     Plaintiff was told by Andy Gruen to focus her efforts on Dallas/Ft. Worth and Oklahoma, as of January 28, 2008, despite improving financials across plaintiff's division in the three weeks since plaintiff returned from maternity leave.

36.     During this time, plaintiff was told by Andy Gruen not to travel to Oklahoma as part of her duties, despite Oklahoma remaining in her area of responsibility.

37.     Prior to her pregnancy and maternity leave, plaintiff would not have been stripped of territory when the territory was improving, she would have been part of any solution and she certainly wouldn't have been told not to actively manage her territory.  Plaintiff was continuing to be set up to fail.

38.     After returning to work on December 31, 2007, and before the January 23, 2008 meeting, plaintiff instituted weekly regional director calls, as she had before taking maternity leave, and instituted new monthly coordinator calls within plaintiff's division to improve communication, morale and decrease turnover in these critical positions.  These calls were directed specifically to defendants' employees that were to report either directly to the plaintiff or the subordinates of managers who reported directly to the Plaintiff.

39.     Plaintiff was told at the January 23, 2008 meeting, by Shad Morgheim, the Regional Vice President of ISC QI, to end the weekly regional director calls and monthly coordinator calls.

40.     Plaintiff was told by Shad Morgheim that the weekly calls to the regional directors

and monthly coordinator calls would distract the plaintiff from Dallas/Ft. Worth.

41.     The requirement for the plaintiff to end the weekly and monthly calls to managers was simply another step in the campaign to distance the plaintiff from her team and allow the team to adjust to not having the plaintiff.  The plaintiff was being set up to fail.

42.     By January 23, 2008, plaintiff was showing significant financial improvement in all regions in Texas except for Dallas/Ft. Worth.  The defendant was trying to separate the plaintiff from her success.

43.     At the meeting of January 23, 2008, Mr. Gruen effectively cut off the plaintiff from the chain of command and position of authority within the company, noting the he would attend the weekly progress calls, called "Friday calls" by the Defendants, and report on the Texas and Oklahoma rehabilitation and home health progress with plaintiff's superiors.

44.     At the meeting of January 23, 2008, Mr. Gruen also stated that he would notify the regional vice presidents and the divisional vice president about Texas and Oklahoma rehabilitation and home health progress.

45.     After confronting Mr. Gruen, plaintiff was allowed to attend the weekly "Friday call" with plaintiff's lateral peers, but Mr. Gruen was still sending out the email informing the other regional vice presidents of the Texas Recovery Plan.

46.     The limitations placed on the plaintiff in the January 23, 2008 meeting was an attempt to erode the plaintiff's authority and responsibility.

47.     On during the December financial review on January 24, 2008, Lee Ann Fein, the Senior Vice President of ISC Operations, noted that the Austin Regional Director, Stephanie

**PLAINTIFF, AMY MCKAY GEHAN'S, ORIGINAL COMPLAINT**          Page 9
08-0484.CPO– original complaint– sex discrimination

Howell was pregnant with twins.  Ms. Fein questioned if she would come back and stated that the team needed to start looking for a replacement.

48.     Regional Directors, like Stephanie Howell are not required to travel on a monthly basis.  The plaintiff's position required travel up to 4 days a week.

49.     The meeting on January 24, 2008, made the plaintiff feel that her job was at risk as the plaintiff's job required much more travel than a regional director's job, and pregnancy was still a significant concern of the plaintiff's boss's boss, Ms. Fein.

50.     In preparation for the December financial review that occurred on January 24, 2008, the plaintiff was in charge of preparing the presentation.  During her pregnancy leave, the format of the monthly meeting had changed.  Plaintiff asked her boss, Mr. Gruen, to review the presentation before the meeting to make sure it complied with the changes that occurred when plaintiff was on maternity leave.  Plaintiff told Mr. Gruen that she would redo the entire presentation if needed.

51.     Plaintiff was told by Mr. Gruen that the presentation was fine.

52.     During the December financial review, plaintiff gave the presentation that was pre-approved by her boss, Mr. Gruen.

53.     The presentation was a disaster.  Ms. Fein and Susannah Dwyer noted that Home Health, a critical element was missing.  Plaintiff was on maternity leave during December and did not know that the home health component was not in the numbers presented.  It was evident that plaintiff's superiors were not happy with the presentation.

54.     At no point during the presentation of January 24, 2008, did Mr. Gruen, indicate

**PLAINTIFF, AMY MCKAY GEHAN'S, ORIGINAL COMPLAINT**      Page 10
08-0484.CPO– original complaint– sex discrimination

that he approved the presentation, nor did he intervene and try to fill the knowledge deficit that plaintiff had, simply because she was on maternity leave in December and was not allowed contact with her team or company reports.

55.    After the meeting, still on January 24, 2008, Mr. Gruen asked the plaintiff to talk to Deb Dunigan, senior director who had a similar situation in Arizona.

56.    Mr. Gruen indicated that it took Deb Dunigan about 4 months to turn around Arizona and that now it was one of the strongest regions in the company.

57.    Plaintiff spoke to Deb Dunigan.  Ms. Dunigan indicated that she did not do it alone, and that without her regional directors help she could not have turned around the region.

58.    Deb Dunigan offered to allow an interim regional director in Denver come to Dallas to help the plaintiff fill that critical position and help turn around that part of plaintiff's region.

59.    Despite having an open position, Mr. Gruen would not allow the proven interim regional director in Denver, offered by Deb Dunigan to provide the needed help.

60.    At this point, plaintiff felt that the goal of the defendant was for Dallas/Ft. Worth not to succeed as long as she remained in her position with the defendants.

61.    On January 25, 2008, the defendants held the monthly ISC meeting at the corporate office.  In the past at that monthly meeting, all questions concerning Texas and Oklahoma were directed to the plaintiff.

62.    At the January 25, 2008 meeting Ms. Fein reported that the Dallas and Ft. Worth regions were the worst regions in the company.

**PLAINTIFF, AMY MCKAY GEHAN'S, ORIGINAL COMPLAINT**          Page 11
08-0484.CPO– original complaint– sex discrimination

63.     At the meeting on January 25, 2008, plaintiff was shunned.  Other management employees would not look the plaintiff in the eyes.

64.     At the meeting on January 25, 2008, Ms. Fein discussed the upcoming divisional meetings held by the Divisional Vice Presidents.  Ms. Fein discussed the presentation the Senior Directors were to present and asked each Senior Director for the date of the meeting.  Despite Ms. Fein earlier indicating how important it was for Senior Directors, like the plaintiff, to speak for their division, Ms. Fein directed Shad Morgheim to give the presentation on the plaintiff's division.

65.     At the meeting on January 25, 2008, Ms. Fein also indicated that she wanted to tour the various divisions and get a field perspective on what was happening.  Ms. Fein did not set any dates to tour any Texas or Oklahoma community after stating that Texas was not in good shape and after stating that Dallas/Ft. Worth was the worst region in the company in the same meeting.

66.     At the meeting on January 25, 2008, key position openings throughout the various divisions throughout the company were discussed.  Although many positions were vacant in the Texas and Oklahoma division and critically the Regional Director position for Dallas, Ms. Fein did not discuss filling any position in the Texas Oklahoma division.

67.     At that same meeting, plaintiff then specifically asked about filling the Regional Director position for Dallas, since the defendant was telling the plaintiff that turning around Dallas was the remaining key for improving the Texas and Oklahoma division.  Ms. Fein rejected the request to put the Dallas Regional Director position on the list of positions critical to be filled

**PLAINTIFF, AMY MCKAY GEHAN'S, ORIGINAL COMPLAINT**          Page 12
08-0484.CPO– original complaint– sex discrimination

by the defendants.

68.     Plaintiff felt unimportant and belittled during the meeting of January 25, 2008.

69.     On February 26, 2008, Mr. Gruen and the plaintiff had a meeting to discuss the Texas and Oklahoma division.  At that meeting, the plaintiff was asked if she was doing okay balancing her work and being a mother with the level of responsibility that the plaintiff had in the defendant's organization.  The plaintiff asked specifically if anyone in the defendants' organization was concerned about plaintiff's job performance.  Mr. Gruen said that no one in the defendants' organization was concerned with plaintiff's job performance.

70.     At that meeting on  February 26, 2008, Andy Gruen then stated that Ms. Fein, Mr. Gruen's immediate superior, was concerned over how the plaintiff could have a child and job with the level of responsibilities required of the plaintiff by the defendants.

71.     Also at that meeting on February 26, 2008, plaintiff expressed her concern that the operating committee led by Ms. Fein, did not support a person's ability to be successful in her position if that person had young children.

72.     Shortly after the meeting of February 26, 2008, plaintiff's resources for the Dallas region were cut further.  Plaintiff was informed by Mr. Gruen that Joe Arroyo, the coordinator, would not be allowed to travel to Dallas and the Dallas Regional Director's position was being put on hold.

73.     Plaintiff was physically sick at the denial of basic resources available to her peers yet withheld from her.  Plaintiff knew then that the entire exercise was a subterfuge to make her fail and allow the defendant to manufacture a reason to fire her.

**PLAINTIFF, AMY MCKAY GEHAN'S, ORIGINAL COMPLAINT**     Page 13
08-0484.CPO– original complaint– sex discrimination

74.     Despite the events detailed in paragraphs 6 to 73, defendants' profits from the plaintiff's division improved markedly in both January and February of 2008.

75.     Prior to becoming pregnant and going on maternity leave, the defendants' management employees praised plaintiff's financial successes like plaintiff had in January and February of 2008.

76.     After returning from maternity leave, plaintiff was not given any acknowledgment or credit whatsoever for the financial improvements in her division in January and February of 2008.

77.     Plaintiff's employment was terminated with the defendant on March 27, 2008.

78.     When the plaintiff's employment was terminated with the defendants, her division ranked financially within the mid-range of all divisions in the company despite having been repeatedly and consistently denied resources, including qualified subordinate mangers, coordinators, field travel and allowed her peers.  In short, despite defendant's efforts to make her fail, the plaintiff still succeeded.

79.     As is specifically described in paragraphs 6 to 78 above, defendants intentionally engaged in unlawful employment practices involving the plaintiff because she is a female who became pregnant and had a child.

80.     Defendant, Brookdale Senior Living, and defendant, American Retirement Corporation discriminated against the plaintiff in connection with the compensation, terms, conditions and privileges of employment in violation of 42 U.S.C. Section 2000e (2)(a).  The effect of these practices has been to deprive the plaintiff of equal employment opportunities and

**PLAINTIFF, AMY MCKAY GEHAN'S, ORIGINAL COMPLAINT**          Page 14
08-0484.CPO– original complaint– sex discrimination

otherwise adversely affect her status as an employee because of her sex.

81.    Brookdale Senior Living, Inc. and  American Retirement Corporation discriminated against the plaintiff on the basis of sex with malice or with reckless indifference to the protected rights of the plaintiff.

82.    By reason of the foregoing, the defendant has deprived the plaintiff of certain benefits, privileges and terms and conditions of employment and denied her continued because of her sex and pregnancy, to her damage and injury. Specifically, plaintiff has been deprived of income in the form of wages, bonuses, raises, and various employment benefits.

83.    As a result of said damages, the plaintiff is entitled to such affirmative relief as may be appropriate, including, but not limited to lost wages and equitable relief pursuant to 42 U.S.C.A. § 2000e-5(g) which in this case should be a reasonable award of front pay.

84.    As the result of the actions of the defendant, plaintiff additionally seeks attorneys fees and expert costs pursuant to 42 U.S.C.A. § 2000e-5(k).

85.    Plaintiff further seeks pre-judgment interest, post-judgment interest and court cost all as allowed by law.

86.    Plaintiff hereby requests Trial by Jury.

**PRAYER**

87.    **WHEREFORE, PREMISES CONSIDERED**, Plaintiff, Amy McKay Gehan, respectfully prays:

A) That the court compensate the plaintiff granting judgment against the defendant for back pay damages and such other relief, such as front pay, as the court deems appropriate;

B) That the court award plaintiff the costs and disbursements of this action, including

reasonable attorneys fees and expert fees;

C) That the court grant court cost, pre-judgment interest, and post-judgment to the

plaintiff in amounts allowed by law; and

D) That the court grant such other relief as is just and equitable.


Respectfully submitted,


By:_____
John L. (Lin) McCraw, III
Texas Bar No. 13482020
1415 Harroun St.
McKinney, Texas  75069
Tel. (972)562-6262
Fax. (972)548-0454
Attorney for Plaintiff
Amy McKay Gehan